**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arturo Contreras, et al., | No. CV-17-08217-PCT-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Chester David Brown, et al., | |
| Defendants. | |

Pending before the Court are Plaintiffs Arturo Contreras and Jose Torres's ("Plaintiffs") Motion for Partial Summary Judgment (Doc. 69) and Defendants Chester Brown ("Defendant Brown") and Legacy, Inc.'s ("Defendant Legacy;" collectively "Defendants") Motion for Partial Summary Judgment (Doc. 121). The Court now rules on the motions.

## I. BACKGROUND

On October 16, 2018, Plaintiffs filed their pending Motion for Partial Summary Judgment (Doc. 69). Defendants filed a timely Response (Doc. 82) on November 15, 2018, and Plaintiffs then filed a timely Reply (Doc. 96) on November 30, 2018.

On February 20, 2019, Defendants filed their pending Motion for Partial Summary Judgment (Doc. 121). Plaintiffs failed a timely Response (Doc. 127) on March 21, 2019, and Defendants then filed a timely Reply (Doc. 133) on April 5, 2019.

The operative Complaint (Doc. 1-1) alleges the following causes of action: (i) negligence, (ii) negligent entrustment, and (iii) negligent hiring, training, and supervision.

(Doc. 1-1 at 29–35).

### A. Facts

The following facts are either undisputed or presented in the light most favorable to Plaintiffs. On December 10, 2014, Defendant Brown was involved in a rear-end collision with Plaintiffs near Kingman, Arizona. (Doc. 69 at 2; Doc. 121-1 at 2). Defendant Brown was driving a loaded tractor-trailer directly behind Plaintiffs' vehicle. (Doc. 69 at 2; Doc. 121 at 2).[1] Plaintiff Torres was driving a 1994 Chevrolet Astro, in which Plaintiff Contreras was a passenger. (Doc. 69 at 2; Doc. 121 at 2). As the parties traveled on Interstate 40, two vehicles in front of the parties stopped suddenly. (Doc. 69 at 2; Doc. 121 at 2). Plaintiffs significantly slowed or stopped without impacting the vehicles in front of them, but Defendant Brown was unable to stop before colliding with the rear of Plaintiffs' vehicle. (Doc. 69 at 2; Doc. 121 at 2). Both parties pulled to the side of the road after the collision and later drove away from the scene without further incident. (Doc. 121-3 at 12; Doc. 121-4 at 23). The Court will discuss other relevant facts as necessary in the body of this Order.

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to

---

[1] At times, Plaintiffs refer to Defendant Brown's tractor-trailer as fully loaded at 40,000 pounds; at other times, Plaintiffs refer to it at 66,000 pounds. (*Compare* Doc. 69 at 2, 6 (40,000 pounds) *with* Doc. 96 at 2, 3 (66,000 pounds); *but see* Doc. 121-4 at 15 (Defendant Brown testified in his deposition that his tractor-trailer was carrying "26,000 pounds, half a load," at the time of the collision)). Regardless of Plaintiffs' confusion, the Court finds this distinction immaterial for the purposes of this Order.

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and the elements of the cause of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* A material fact is any factual issue that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

At the summary judgment stage, the Court's role is to determine whether there is a genuine issue available for trial. There is no issue for trial unless there is sufficient evidence in favor of the non-moving party for a jury to return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 249-50. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

### III. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The Court will first address Defendants' Motion for Partial Summary Judgment (Doc. 121). Defendants move for partial summary judgment on Plaintiffs' direct negligence claims against Defendant Legacy.

**A. Vicarious Liability**

Defendant Legacy admits that, under the doctrine of *respondeat superior*, it is

1 vicariously liable for Defendant Brown's actions because Defendant Brown was "acting within the course and scope of his employment at the time of the collision." (Doc. 121 at 1). Defendants' argument follows that, because Defendant Legacy concedes vicarious liability, any direct liability claims against Defendant Legacy are "subsumed" and rendered superfluous by the vicarious liability claims. (*Id.* at 3–4). Recently, the District of Arizona addressed this argument—raised by the same Counsel, in a strikingly similar context—and this Court need not reinvent that analysis:

> [Defendants] cite[] *Lewis v. Southern Pacific Company*, in which the Arizona Supreme Court stated that "failure of an employer to hire only competent and experienced employees does not itself constitute an independent ground of actionable negligence." 425 P.2d 840, 841 (Ariz. 1967). However, since *Lewis*, Arizona has adopted new theories of joint and several liability and comparative negligence. *See* A.R.S. § 12-2501. Additionally, multiple subsequent cases decided by the Arizona Court of Appeals have held that the holding in *Lewis*—that negligent hiring and supervision is not an independent ground of actionable negligence against the employer—is limited. *See Quinonez in re Quinonez v. Andersen*, 696 P.2d 1342 (Ariz. Ct. App. 1984); *Pruitt v. Pavelin*, 685 P.2d 1347 (Ariz. Ct. App. 1984); *Kassman v. Busfield Enterprises, Inc.*, 639 P.2d 353 (Ariz. Ct. App. 1981) (recognizing negligent hiring, training, and supervision as a separate cause of action against an employer).

*Brill v. Lawrence Transp. Co.*, No. CV-17-01766-PHX-JJT, 2018 WL 6696815, at *2 (D. Ariz. Dec. 20, 2018); *see also Salazar v. Flores*, No. CV-16-08201-PCT-SPL, 2019 WL 1254661, at *2 (D. Ariz. Mar. 18, 2019) (holding—consistent with *Brill*—that "[b]ecause the Court finds that *Quinonez* applies, Plaintiff is permitted to bring both vicarious liability and direct negligence claims under Arizona law").

"As a result, the Court finds that *Lewis* is not controlling in this matter and Arizona law allows Plaintiff[s] to allege direct liability claims in addition to claims of vicarious liability." *See Brill*, 2018 WL 6696815, at *2. Accordingly, Defendants are not entitled to partial summary judgment on this theory.

### B. Sufficiency of the Evidence

Alternatively, Defendants argue that Plaintiffs' direct negligence claims against Defendant Legacy lack sufficient evidence to survive summary judgment. (Doc. 121 at 7).

### 1. Negligent Entrustment

To establish a negligent entrustment claim under Arizona law, Plaintiffs must prove the following elements:

> (1) that Defendant[s] owned or controlled a vehicle; (2) Defendant[s] gave the driver permission to operate a vehicle; (3) the driver, by virtue of his physical or mental condition, was incompetent to drive safely; (4) the Defendant[s] knew or should have known that the driver, by virtue of his physical or mental condition, was incompetent to drive safely; (5) causation; and (6) damages.

*Acuna v. Kroack*, 128 P.3d 221, 227 (Ariz. Ct. App. 2006) (internal quotation marks and citation omitted).

In this matter, the undisputed fact that "[Defendant] Brown was operating his tractor-trailer under the motor carrier authority of [Defendant] Legacy" at the time of the accident satisfies the first two elements of negligent entrustment. (*See* Doc. 121 at 11). Defendants argue that Plaintiffs cannot satisfy the next three elements of negligent entrustment. (*Id.* at 10–11). Specifically, Defendants contend that Plaintiffs have not set forth evidence that: (1) "[Defendant] Brown was incompetent either physically or mentally to operate a tractor-trailer;" (2) "[Defendant] Legacy had reason to believe that [Defendant] Brown was incompetent;" or (3) that there is a "causal connection" between Defendant Legacy's alleged negligence and Plaintiffs' injuries. (*Id.* at 11; Doc. 133 at 5).

Plaintiffs counter that, "[a]t the time of the crash, [Defendant] Brown was diabetic" and "also suffered from high blood sugar;" taking daily medication to control both conditions. (Doc. 127 at 4). Even so, Plaintiffs do not cite any regulation or other authority that demonstrates these conditions render Defendant Brown incompetent to operate a tractor-trailer or otherwise disqualify Defendant Brown from holding a commercial driver's license. (*See* Doc. 133 at 2). Conversely, Federal Motor Carrier Safety Regulations (FMCSRs) provide that "an individual with diabetes mellitus treated with insulin for control must be medically examined and certified by a medical examiner as physically qualified;" and "a person is physically qualified to drive a commercial motor vehicle if that person . . . [h]as no current clinical diagnosis of high blood pressure likely to interfere with

ability to operate a commercial motor vehicle safely." 49 C.F.R. § 391.46 (regarding diabetes); 49 C.F.R. § 391.41 (regarding high blood pressure).

Here, Defendant Brown held a valid Department of Transportation medical certificate at the time of the collision. (*See* Doc. 133-1). Defendant Brown's "Medical Examination Report" notes that his diabetes was controlled by pills—not insulin—and his blood pressure also met the required standards to maintain his certification. (*Id.* at 2–3). Thus, the Court finds that Defendant Brown was physically qualified and properly licensed to operate a commercial motor vehicle at the time of the collision. Moreover, Plaintiffs do not argue that Defendant Brown suffered from any mental condition that would render him incompetent to drive safely. (*See generally* Doc. 127). Accordingly, Plaintiffs cannot satisfy the third element of a negligent entrustment claim (or the subsequent elements, which are based on Defendant Brown's competency).[2] Thus, Defendants are entitled to summary judgment on Plaintiffs' claim for negligent entrustment.

## 2. Negligent Hiring, Training, and Supervision

Next, Defendants move for summary judgment on Plaintiffs' remaining direct negligence claim for negligent hiring, training, and supervision. (*See* Doc. 121 at 7).

### a. Legal Standard

"An employer is liable for the tortious conduct of its employee if the employer was negligent or reckless in hiring, supervising, or otherwise training the employee." *Hernandez*, 2019 WL 367994, at *6 (citation omitted). For negligent hiring, supervision,

---

[2] Although not raised by Plaintiffs, "some Arizona courts have suggested the incompetence may arise from other factors, such as youth, inexperience, driving habits, and poor character." *Hernandez v. Singh*, No. CV-17-08091-PCT-DWL, 2019 WL 367994, at *3 (D. Ariz. Jan. 30, 2019). Because Plaintiffs did not raise any arguments under the more expansive definition of incompetence, the Court finds that any such arguments are hereby waived. *See, e.g.*, *U.S. v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) ("arguments not raised by a party in its opening brief are deemed waived").

Nevertheless, to the extent any of Plaintiffs' arguments on their remaining direct negligence claim against Defendant Legacy bear on the issue of Defendant Brown's competency, the Court finds—for the reasons outlined below—that "Plaintiffs have not presented evidence sufficient to establish a genuine issue of fact as to whether [Defendant Brown] was incompetent or otherwise unfit to drive when [Defendant Legacy] entrusted the vehicle to him." *Hernandez*, 2019 WL 367994, at *4 (holding the same under similar factual circumstances); *see infra* Part III(B)(2)(b).

and training claims, "Arizona follows the Restatement (Second) of Agency § 213." *Id.* (internal quotation marks and citation omitted). Section 213 provides:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> (a) in giving improper or ambiguous orders of [sic] in failing to make proper regulations; or
>
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others[;]
>
> (c) in the supervision of the activity; or
>
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213 (1958).

"For an employer to be held liable for the negligent hiring, retention, or supervision of an employee, a court must first find that the employee committed a tort." *Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004). Once the underlying tort of an employee is established, the employer may be liable "not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment." *Quinonez*, 696 P.2d at 1346 (citation omitted).

"Thus, for a negligent hiring claim to lie, the employer must have known or had some reason to know of the employee's incompetence before hiring the employee." *Hernandez*, 2019 WL 367994, at *6 (collecting cases). "Similarly, to prove negligent supervision, the plaintiff must show the employer knew or should have known the employee was incompetent and that the employer subsequently failed to supervise the employee, ultimately causing the harm at issue." *Id.* at *7 (collecting cases). "[T]o prevail on a negligent training claim, a plaintiff must show a defendant's training or lack thereof was negligent and that such negligent training was the proximate cause of a plaintiff's injuries." *Id.* (citation omitted). Importantly, "[a] showing of an employee's incompetence is not necessarily enough; the plaintiff must also present evidence showing what training

should have been provided, and that its omission proximately caused the plaintiff's injuries." *Id.* (citation omitted).

### b. Analysis

To support their negligent hiring, training, and supervision claim, Plaintiffs argue that Defendant Brown was not formally or properly trained prior to his employment by Defendant Legacy, and Defendant Legacy failed to provide "on-the-job training" or adequately assess Defendant Brown's capabilities upon hiring Defendant Brown. (Doc. 127 at 5–6). Rather, Plaintiffs state that "[Defendant] Legacy 'figured he knew what do [sic] while operating a truck because he had been driving for over 40 years.'" (*Id.* at 6 (citing "Exhibit 1 at 37–46")).[3]

As a preliminary matter, Defendants point out that "Plaintiffs never disclose opinions from a trucking expert on the standard of care" that Defendant Legacy must follow and allegedly breached through its employment practices. (Doc. 121 at 7).[4] Even assuming the truth of Plaintiffs' assertions at the summary judgment stage, Plaintiffs do not cite any federal regulation or similar rule that could demonstrate the shortcomings of Defendant Legacy's hiring and training practices. (*Compare* Doc. 133 at 3 *with* Doc. 127 at 5–6). Conversely, Defendants provide that FMCSRs set out the following "[g]eneral qualifications of drivers." 49 C.F.R. § 391.11. "A person is qualified to drive a motor vehicle" under the applicable regulatory framework if he or she:

(1) Is at least 21 years old;

---

[3] Although Plaintiffs attribute the quoted statement to Defendant Legacy, Plaintiffs cite a broad range of pages of deposition transcripts, which do not appear to contain the purported quote. (*See* Doc. 127 at 6); *see also Conti v. U.S. Dept. of Homeland Sec.*, 12 Civ. 5827(AT), 2014 WL 1274517, at *21 (S.D.N.Y. Mar. 24, 2014) ("Courts are not obligated to wade through pages of deposition testimony, but must rely on the parties to point to specific pages in the record" (citation omitted)). The closest statement that this Court observes is from Defendant Brown in response to a question regarding Defendant Legacy's lack of emergency training: "they figure if you've driven 40 years, that you already know what to do in an emergency." (Doc. 127 at 21).

[4] *See also Rae v. United States*, No. CV-15-01551-PHX-JJT, 2016 WL 4943378, at *2 (D. Ariz. Sept. 16, 2016) (reasoning that a plaintiff's failure "to disclose an expert, alone, warrants summary judgment" in the defendant's favor because "without a standard of care expert, [the plaintiff] is unable to prove essential elements of her claims" on which the plaintiff will bear the burden of proof at trial).

- 8 -

> (2) Can read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records;
>
> (3) Can, *by reason of experience*, training, or both, safely operate the type of commercial motor vehicle he/she drives;
>
> (4) Is physically qualified to drive a commercial motor vehicle in accordance with subpart E—Physical Qualifications and Examinations of this part;
>
> (5) Has a currently valid commercial motor vehicle operator's license issued only by one State or jurisdiction;
>
> (6) Has prepared and furnished the motor carrier that employs him/her with the list of violations or the certificate as required by § 391.27;
>
> (7) Is not disqualified to drive a commercial motor vehicle under the rules in § 391.15; and
>
> (8) Has successfully completed a driver's road test and has been issued a certificate of driver's road test in accordance with § 391.31, *or has presented an operator's license* or a certificate of road test which the motor carrier that employs him/her has accepted as equivalent to a road test in accordance with § 391.33.

*Id.* (emphasis added).

Here, the record confirms that Defendant Brown held a valid commercial driver's license from the State of Missouri. (Doc. 133-3 at 6, 11). Plaintiffs do not dispute that Defendant Brown—at all relevant times—satisfied the (1) age, (2) English language, (5) licensure, and (6) certificate requirements. Plaintiffs further do not allege, and this Court does not find, that Defendant Brown was otherwise disqualified to drive a commercial vehicle under item (7). *See* 49 C.F.R. § 391.15. As reasoned above, Defendant Brown also held a valid Department of Transportation medical certificate to support this Court's finding that he was physically qualified under item (4). *See supra* Part III(B)(1); (*see also* Doc. 133-1). Thus, the remaining items that could potentially be subject to dispute pertain to: (3) safe operation and (8) road testing.

Regarding item (3), Plaintiffs argue that Defendant Brown "never underwent professional driver training education prior to obtaining his commercial driver's license,"

nor did he "receive any formal on-the-job training on how to drive a tractor-trailer from [Defendant] Legacy." (Doc. 127 at 5–6). Formal training, however, is not required under the applicable regulation if Defendant Brown instead demonstrated that he could safely operate a tractor-trailer "by reason of experience." *See* 49 C.F.R. § 391.11(b)(3). Defendants provide, and Plaintiffs do not dispute, that Defendant Brown "has never been involved in an accident while driving a commercial motor vehicle prior to this accident" in over 40 years of holding a commercial driver's license. (Doc. 121 at 8). Moreover, Defendant Brown logged over 3 million miles on his current truck alone. (Doc. 121-6 at 22). Plaintiffs fail to rebut Defendants' argument that Defendant Brown's history is sufficient to meet the requirements of item (3) "by reason of experience," nor do Plaintiffs point to evidence that demonstrates Defendant Brown was otherwise incompetent to safely operate his tractor-trailer. (*See generally* Doc. 127). Accordingly, this Court finds that Defendants establish that Defendant Brown satisfied item (3) at the time of his employment by reason of experience.

Regarding item (8), Plaintiffs argue that Defendant Legacy did not administer a "driving test" to Defendant Brown prior to on-boarding him. (Doc. 127 at 6). As Defendants point out, however, Defendant Legacy is not required to do so under FMCSRs. (*See* Doc. 133 at 4). The applicable regulation provides that a driver may alternatively satisfy item (8) by presenting an "operator's license," as Defendant Brown did here. *See* 49 C.F.R. § 391.11(b)(3); (*see also* Doc. 133-3 at 6, 11). Accordingly, the Court finds that Defendants also establish that Defendant Brown satisfied item (8) at the time of his employment. Thus, Defendant Brown possessed all the requisite "[g]eneral qualifications of drivers" before Defendant Legacy hired him. *See* 49 C.F.R. § 391.11(b).[5] Because the

---

[5] *See also Salazar*, 2019 WL 1254661, at *3 (finding that a defendant-transportation company was entitled to summary judgment on a similar claim for negligent hiring, supervision, and training because "[n]othing in the evidence suggests that any pre-employment checks or pre-employment testing would have provided [the defendant-transportation company] with any notice of [the driver's] alleged incompetence;" there, the court found that the defendant-trucking company's failure to conduct a road test or disseminate a driver safety handbook to its driver, among other factors, was insufficient to preclude summary judgment on a negligent hiring claim).

record shows Defendant Legacy lacked actual or constructive knowledge of Defendant Brown's alleged incompetence before hiring him, the Court finds that Defendants are entitled to summary judgment as to negligent hiring.

For the same reasons, Plaintiffs fail to demonstrate that Defendant Legacy "knew or should have known the employee was incompetent" while under the supervision of Defendant Legacy. *See Hernandez*, 2019 WL 367994, at *7. Plaintiffs do not point to, nor does the Court find, any evidence to show how Defendant Legacy's reasonable competency assumptions could have changed after Defendant Brown began working for Defendant Legacy. (*Compare* Doc. 127 *with* Doc. 121-6 at 22). Accordingly, Defendants are entitled to summary judgment as to negligent supervision.

Additionally, without identifying any regulation or industry standard, Plaintiffs are unable to show how Defendant Legacy's alleged lack of training was negligent. (*See generally* Doc. 127).[6] Moreover, even if Plaintiffs could demonstrate that additional training was required under some standard of care, Plaintiffs fail to "present evidence showing what training should have been provided, and that its omission proximately caused the plaintiff's injuries." *See Hernandez*, 2019 WL 367994, at *7.[7] Thus, Plaintiffs' claim is deficient as to a required element of negligent training. *See Celotex Corp.*, 477 U.S. at 322. Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiffs' claim for negligent hiring, training, and supervision.[8]

## IV. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs move for partial summary judgment on the issues of liability and *respondeat superior*.

---

[6] At one point, Plaintiffs argue that Defendant Legacy did not provide "any training whatsoever," but Plaintiffs concede elsewhere that Defendant Legacy does provide training to drivers "as needed . . . via a mass company-wide e-mail." (Doc. 127 at 6 (citing *id.* at 42)).

[7] Without a trucking expert, Plaintiffs cannot present evidence regarding industry standards at trial, and presented no argument as to what training should have been provided herein. (*See generally* Doc. 127).

[8] Because the Court finds that Defendant Legacy was not negligent in its hiring, training, or supervision of Defendant Brown, it need not address the additional element of causation.

## A. Liability

In Arizona, to establish a claim for negligence, "a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach of the duty of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Alegria v. United States*, No. CV-11-809-TUC-HCE, 2012 WL 12842258, at *4 (D. Ariz. Nov. 20, 2012) (citing *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007)).

Plaintiffs argue that they are entitled to summary judgment on liability, but only specifically explains that the record "supports entry of summary judgment on the duty and breach elements of Plaintiffs' negligence claims." (Doc. 69 at 7). Plaintiffs assert that they establish liability under either the doctrine of *res ipsa loquitur* or negligence per se. (*Id.* at 6–7).

### 1. *Res Ipsa Loquitur*

Under Arizona law, *res ipsa loquitur* requires the following conditions be met:

> (1) The accident must be of a kind which ordinarily does not occur in the absence of some one's negligence;
>
> (2) It must be caused by an agency or instrumentality within the exclusive control of defendant;
>
> (3) It must not have been due to any voluntary action on the part of the plaintiff;
>
> (4) Plaintiff must not be in a position to show the particular circumstances which caused the offending agency or instrumentality to operate to his injury.

*O'Donnell v. Maves*, 436 P.2d 577, 579 (Ariz. 1968). A plaintiff must meet "all the conditions of *res ipsa loquitur*" for the doctrine to apply. *Jackson v. H. H. Robertson Co., Inc.*, 574 P.2d 822, 826 (Ariz. 1978). While "a plaintiff who is the victim of 'the usual rear-end collision' may, under appropriate circumstances, have the benefit of the doctrine," *res ipsa loquitur* does not apply to rear-end collision cases where the evidence reveals the cause of the accident. *Conner v. Brkich*, 481 P.2d 894, 896 (Ariz. Ct. App. 1971) (quoting *O'Donnell*, 436 P.2d at 579 (holding that *res ipsa loquitur* did not apply to a rear-end

collision where the evidence established that the collision occurred from brake failure)).

Defendants contend that Plaintiffs cannot meet the second, third, or fourth condition for *res ipsa loquitur*. Relevant to the fourth condition, Plaintiffs provide a detailed recounting of the circumstances of the collision: "[Defendant] Brown was immediately behind the Torres vehicle in a tractor[-]trailer" when "the vehicles in front of [both parties'] vehicles stopped suddenly." (Doc. 69 at 2). Plaintiffs continue that Plaintiffs "safely stopped without impacting the vehicle in front of [them]," but "[Defendant] Brown failed to yield to traffic in front of his vehicle and failed to maintain a safe distance, causing him to crash into the rear of [Plaintiffs'] vehicle." (*Id.*). The Court finds that Plaintiffs' ability to show "the particular circumstances" which allegedly caused the injury defeats the applicability of *res ipsa loquitur*. *See O'Donnell*, 436 P.2d at 581 (agreeing that when a plaintiff was aware that a collision "was caused by excessive speed, the doctrine was inapplicable").[9] Accordingly, Plaintiffs are not entitled to partial summary judgment on the issue of liability under the doctrine of *res ipsa loquitur*.

## 2. Negligence Per Se

Next, Plaintiffs argue that Defendant Brown "is liable for this crash under the doctrine of negligence per se." (Doc. 69 at 7). In Arizona, a "person who violates a statute enacted for the protection and safety of the public is guilty of negligence per se." *Jensen v. EXC, Inc.*, No. CV-15-08019-PHX-SPL, 2019 WL 588034, at *3 (D. Ariz. Feb. 13, 2019) (citation omitted). "Arizona's traffic code is a safety regulation that can be the basis for negligence per se." *Id.* (citation omitted). "However, a finding of negligence per se does not relieve the plaintiff from its burden of proving causation and damages." *Id.* (citing *City of Phoenix v. Mullen*, 174 P.2d 422, 424 (Ariz. 1946) (stating that "[w]here the driver fails to comply with the positive directions of the statute, the question of whether such statutory negligence in any way contributed to the accident and injury of the plaintiff was one for

---

[9] Because the test is conjunctive, the Court need only find that Plaintiffs fail to satisfy one condition for *res ipsa loquitur* to be inapplicable. *See Conner*, 481 P.2d at 826. As such, the Court need not analyze Defendants' arguments—grounded in comparative negligence—regarding the other conditions of *res ipsa loquitur*. (*See* Doc. 82 at 6).

- 13 -

the jury" (internal quotation marks and citation omitted))). Moreover, "Arizona is a comparative negligence state in which the relative degrees of fault of the claimant, all defendants, and nonparties are to be determined and apportioned by the finder of fact." *Id.* (citing Ariz. Rev. Stat. §§ 12-2505, 12-2506).

Plaintiffs argue that Defendant Brown violated two statutes through his acts culminating in the rear-end collision with Plaintiffs' vehicle: Arizona Revised Statutes §§ 28-701(A) and 28-730(A). (*See* Doc. 69 at 7). Arizona Revised Statute § 28-701(A) provides, in pertinent part, that "[a] person shall control the speed of a vehicle as necessary to avoid colliding with any object, person, vehicle or other conveyance on, entering or adjacent to the highway in compliance with legal requirements and the duty of all persons to exercise reasonable care for the protection of others." Ariz. Rev. Stat. § 28-701(A). Arizona Revised Statute § 28-730(A) similarly provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent and shall have due regard for the speed of the vehicles on, the traffic on and the condition of the highway." Ariz. Rev. Stat. § 28-730(A).[10]

Here, it is undisputed that Defendant Brown collided with the rear of Plaintiffs' vehicle. (Doc. 82 at 2–3). Defendant Brown stated in his deposition that the collision occurred because he "didn't have enough response time" after the vehicles in front of him stopped suddenly. (Doc. 69 at 33). It stands to reason, therefore, that Defendant Brown breached his duty to Plaintiffs by following Plaintiffs' vehicle more closely than necessary

---

[10] Defendants correctly point out that "[n]egligence per se applies upon violation of a specific requirement of law whereby conduct can be measured versus an otherwise general principle." *Lee v. State Farm Mut. Auto. Ins. Co.*, No. CV 03-624-TUC-HCE, 2006 WL 2917348, at *2 (D. Ariz. Oct. 10, 2006) (citing *Hutto v. Francisco*, 107 P.3d 934, 937 (Ariz. Ct. App. 2005) (explaining that a statute must proscribe certain or specific acts to support a finding of negligence per se in holding that a statute requiring that "vehicles must be safely maintained" is an insufficiently specific standard by which conduct must be measured)). The District of Arizona previously acknowledged, however, that Arizona courts find Arizona Revised Statute § 28-730(A) sufficiently specific, such that a violation of that statute constitutes negligence per se. *Lee*, 2006 WL 2917348, at *2 (citing *Newman v. Piazza*, 433 P.2d 47, 51 (Ariz. Ct. App. 1967) (acknowledging that a "jury was instructed that it would be negligence per se to violate A.R.S. § 28–730(A)")). Accordingly, this Court rejects Defendants' argument that Plaintiffs failed to raise a statute for which a violation can constitute negligence per se.

to maintain sufficient "response time" to avoid the rear-end collision. *See id.*; Ariz. Rev. Stat. §§ 28-701(A), 28-730(A). Accordingly, the Court finds that Defendant Brown's statutory violations of Arizona Revised Statutes §§ 28-701(A) and 28-730(A) amount to negligence per se; thus satisfying the elements of duty and breach on Plaintiffs' negligence claim.

### 3. Causation

Even though negligence per se applies, the doctrine fails to independently establish the element of causation, which is required to impose liability on a party for negligence. *See, e.g.*, *Jensen*, 2019 WL 588034, at *3 (finding that a defendant's statutory violation was negligence per se, but denying summary judgment as to liability because the plaintiff did not carry her additional "burden of proving causation"). "The proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Hernandez*, 2019 WL 367994, at *7 (citation omitted). Generally, "it is for the jury to determine" the extent to which a defendant's breach "contributed to the accident and injury of [the plaintiffs]." *Jensen*, 2019 WL 588034, at *4 (quoting *Mullen*, 174 P.2d at 424).

Here, Defendants argue that causation remains a disputed issue on a theory of comparative negligence. (Doc. 82 at 3).[11] Specifically, Defendants point out the undisputed fact that that two vehicles ahead of Plaintiffs' vehicle "were driving in such a manner that caused Plaintiffs' vehicle to slow significantly, or stop, suddenly." (*Id.*; *see also* Doc. 96 at 4 (Plaintiffs agree that "the two vehicles in front of Plaintiffs' vehicle simply stopped for an unknown reason to the parties")). Defendants also dispute "that Plaintiffs' vehicle stopped *safely* on the highway." (Doc. 82 at 3 (emphasis in original) (citing Doc. 82-5 at

---

[11] Under Arizona's comparative negligence statute, "[i]n assessing percentages of fault the trier of fact shall consider the fault of all persons who contributed to the alleged injury, death or damage to property, regardless of whether the person was, or could have been, named as a party to the suit." Ariz. Rev. Stat. § 12-2506(B). "The relative degree of fault of the claimant, and the relative degrees of fault of all defendants and nonparties, shall be determined and apportioned as a whole *at one time* by the trier of fact." Ariz. Rev. Stat. § 12-2506(C) (emphasis added).

- 15 -

18 (Defendant Brown stated in his deposition that "[Plaintiffs' vehicle] in front of me just slammed on the brakes and just stopped, and the vehicles in front of them stopped like they [were] playing or something"))). Defendants' argument follows that the fact that Plaintiffs' vehicle "came to a complete stop or slowed significantly on this stretch of highway leaves room for a comparative negligence argument [regarding] Plaintiff Torres' actions." (*Id.*). Defendants also named the two vehicles in front of Plaintiffs' vehicle as "non-parties at fault." (*Id.* at 4 (citing Doc. 82-6)).

Although Plaintiffs argue that Defendant Brown "fails to identify any breach of duty by the vehicles in front of Plaintiffs" and "Defendants offer no evidence . . . to show the vehicles in front of Plaintiffs negligently stopped their vehicles," Plaintiffs—as the moving party—carry the burden of demonstrating that there is no genuine dispute as to causation in order to prevail on that issue at summary judgment. (Doc. 96 at 4); *see Liberty Lobby, Inc.*, 477 U.S. at 248. In construing all disputed facts in the light most favorable to the non-moving party, the Court finds that a reasonable factfinder could apportion some percentage of fault to someone other than Defendants. *See Jensen*, 2019 WL 588034, at *2 (accepting a defendant's argument that "because Arizona is a pure comparative fault jurisdiction, even if [the defendants] were to be found negligent, the trier of fact would still need to establish what percentage of fault to attribute to him and decedent"); *see also Silvestri v. Hurlburt*, 547 P.2d 514, 517 (Ariz. Ct. App. 1976) ("There is neither reason nor logic in preventing the court from telling the jury that it is negligence per se to violate the safety law herein involved and leave it to the jury to decide whether such violation amounted to contributory negligence." (citation omitted)).[12] Indeed, Defendants' expert, "accident reconstructionist/biomechanical engineer," Joseph Manning, opines to that end. (*See* Doc.

---

[12] Other courts similarly support the premise that a disputed issue as to comparative fault should preclude summary judgment on liability even if the defendants will be apportioned some percentage of fault. *See, e.g., Ervin v. Shelter Gen. Ins. Co.*, Civil Action No. 14-0047-SDD, 2015 WL 1757869, at *2 (M.D. La. Apr. 17, 2015) (denying summary judgment as to liability when a rear-end collision was caused by a sudden stop on an interstate because "[n]otwithstanding the presumption of negligence, a favored motorist can still be assessed with comparative fault if his substandard conduct contributed to the cause of the accident").

82 at 4).[13] Accordingly, the Court finds that Plaintiffs are not entitled to partial summary judgment as to liability due to the disputed issue of causation.

**B. Vicarious Liability**

Plaintiffs also argue that Defendant Legacy is vicariously liable "for any resulting injury caused by the negligence of [Defendant] Brown" under the doctrine of *respondeat superior*. (*See* Doc. 69 at 8). Likewise, "Defendants concede that if Defendant Brown is found to be at fault, then Defendant Legacy [] would be vicariously liable" under the doctrine of *respondeat superior*. (Doc. 82 at 9). Accordingly, the Court finds that, should Defendant Brown be found liable for negligence in this case, it is undisputed that vicarious liability applies to Defendant Legacy. However, because the Court finds that Plaintiffs are not entitled to summary judgment on the issue of liability, Defendant Legacy is not yet subject to liability as a matter of law. *See supra* Part IV(A).

**V. CONCLUSION**

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment (Doc. 121) is **GRANTED** as to the direct negligence claims against Defendant Legacy.

///
///
///
///
///
///
///
///
///

---

[13] This Court previously entered an Order (Doc. 97) partially denying Plaintiffs' Motion to Strike Defendants' Expert Joseph Manning (Doc. 70) as it pertained to Manning's biomechanical opinions regarding the collision contained in his expert report. (*See generally* Doc. 97).

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Doc. 69) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to the applicability of negligence per se, thus establishing the elements of duty and breach on Plaintiffs' first negligence claim, and as to the applicability of vicarious liability. The motion is denied as to the applicability of *res ipsa loquitur*, and Defendants' liability for negligence because there remains a genuine dispute as to causation.[14]

Dated this 3rd day of May, 2019.

James A. Teilborg
Senior United States District Judge

---

[14] The Court notes that Plaintiffs' Motion to Strike Defendants' Expert Mary Rossi (Doc. 122) remains pending and will be resolved in due course.