**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arturo Contreras, individually; Jose N. Torres, individually,<br><br>Plaintiffs,<br><br>v.<br><br>Chester David Brown; Legacy, Inc. and; Roe Business Entities I through X, inclusive,<br><br>Defendants. | No. CV-17-08217-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiffs' Motion to Strike Defendants' Expert Mary Rossi (Doc. 122). The Court now rules on the motion.

**I.  BACKGROUND**

On February 21, 2019, Plaintiffs filed the pending Motion to Strike Defendants' Expert Mary Rossi. (Doc. 122). Defendants subsequently filed a Response (Doc. 124) on March 7, 2019, to which Plaintiffs filed a Reply (Doc. 126) on March 13, 2019.

**A.  Facts**

The Court previously discussed the background facts of this case at length and need not repeat them here. (*See* Doc. 137 at 2). Relevant to the pending motion, Plaintiff Torres incurred significant medical bills from treatment in Arizona and Nevada following a rear-end collision with Defendant Brown. (Doc. 122 at 2). Defendants retained Rossi as an expert to testify in the area of medical billing. (Doc. 124 at 1). Rossi holds a degree in nursing, is a registered nurse in Wisconsin, and became a certified legal nurse consultant

in 2004. (Doc. 124 at 4–5 (citing Doc. 124-6 at 2); *see also* Doc. 124-7 at 5). Rossi previously testified in multiple venues across the country about the reasonable value of medical services. (Doc. 124 at 5 (citing Doc. 124-7 at 6)). Rossi is not, nor has she ever been, licensed as a nurse in Arizona or Nevada. (Doc. 122 at 2; Doc. 124 at 5).

## II. LEGAL STANDARD

### A. Federal Rule of Evidence 702 and *Daubert*

Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The United States Supreme Court and the Ninth Circuit Court of Appeals issued opinions interpreting Rule 702 that guide this Court's analysis. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("*Daubert I*"); *see also Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311 (9th Cir. 1995) ("*Daubert II*"). In *Daubert I*, the Supreme Court held that Rule 702 imposes a special gatekeeping obligation upon a trial judge to make a preliminary assessment of the admissibility of expert scientific testimony. *Daubert I*, 509 U.S. at 589. Specifically, the Supreme Court held that under Rule 702, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. Whether the expert is appropriately qualified, whether her testimony is relevant, and whether her testimony is reliable are all distinct inquiries under Rule 702. *See id.* at 591; *see also Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1066 (9th Cir. 2002) (indicating that reliability of an expert's testimony is a

distinct inquiry from whether an expert is qualified).

### 1. Qualifications

As an initial matter, the trial court must determine whether a proposed expert is qualified under Rule 702 by "knowledge, skill, experience, training, or education." *Daubert I*, 509 U.S. at 588 (citing Fed. R. Evid. 702); *see also Daubert II*, 43 F.3d at 1315. Because the rule "contemplates a broad conception of expert qualifications," only a "minimal foundation of knowledge, skill, and experience" is required. *Wagner v. ABW Legacy Corp, Inc.*, No. CV–13–2245–PHX–JZB, 2016 WL 880371, at *5 (Mar. 8, 2016) (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015–16 (9th Cir. 2004)). A lack of particularized expertise "goes to the weight of the testimony, not its admissibility." *Id.* (citing *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993)).

### 2. Reliability

Generally, to satisfy Rule 702's reliability requirement, "the party presenting the expert must show that the expert's findings are based on sound methodology." *Daubert II*, 43 F.3d at 1316. Factors for a trial court to consider in determining reliability include: (1) whether the theory, technique, or method used by the expert to form her opinion can or has been tested; (2) the known or potential rate of error in the expert's theory, technique, or method; (3) whether the theory, technique, or method has been subjected to peer review and publication; (4) whether there are standards controlling the theory, technique, or method's operation; and (5) the general acceptance of the theory, technique or method within the relevant community. *See Cooper v. Brown*, 510 F.3d 870, 942–43 (9th Cir. 2007) (citing *Daubert I*, 509 U.S. at 593–94); *see also United States v. Prime*, 431 F.3d 1147, 1152 (9th Cir. 2005).

The list is illustrative, not exhaustive, and may be inapplicable in a given case. *Daubert II*, 43 F.3d at 1317. As the Supreme Court recognized, all expert theories may not fit neatly into the five factors carved out in *Daubert I* and *Daubert II*; as such, the test for reliability must be "flexible." *Kumho Tire v. Carmichael*, 526 U.S. 137, 141 (1999). This is especially so when the expert is testifying to "technical" or "other specialized

knowledge" as opposed to scientific testimony. *Id.* at 148 (citing Fed. R. Evid. 702). As such, a trial court may consider the enumerated factors, but ultimately must determine whether the testimony has a "reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 149 (citing *Daubert I*, 509 U.S. at 592).

### 3. Relevance and Fit

Once qualified, an expert may testify within her area of expertise so long as the expert's testimony "is both relevant and reliable." *Cooper*, 510 F.3d at 942 (9th Cir. 2007); *see also Daubert I*, 509 U.S. at 589. Expert testimony is relevant if it assists the trier of fact in understanding evidence or in determining a fact in issue. *Daubert I*, 509 U.S. at 591. Thus, the party proffering such evidence must demonstrate a valid scientific connection, or "fit," between the evidence and an issue in the case. *Id.* A court therefore examines whether the proffered expert testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)). Expert knowledge also assists the trier of fact when it provides knowledge beyond the trier of fact's common knowledge. *Id.*; *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002).

### B. Collateral Source Rule

"Arizona follows the common law collateral source rule, which provides that payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." *Mesirow v. Leiserv, Inc.*, No. CIV 04-2052 PHX RCB, 2005 WL 6271135, at *4 (D. Ariz. Dec. 1, 2005) (internal quotation marks and citations omitted). "The collateral source rule is most often applied in cases where an injured party recovers from a tortfeasor amounts for which plaintiff has already been compensated by his insurer." *Lopez v. Safeway Stores, Inc.*, 129 P.3d 487, 492 (App. 2006). Arizona courts recognize that "[p]ayments made to a medical provider by an insurance carrier on behalf of an insured . . . are payments made by a collateral source and, thus, are not admissible in evidence for that reason." *Id.* at 496 (citation omitted).

## III. ANALYSIS

Plaintiffs move to strike Defendants' expert Rossi pursuant to Rule 702 and *Daubert*, as well as the collateral source rule. (*See* Doc. 122 at 3)

### A. Federal Rule of Evidence 702 and *Daubert*

Plaintiffs argue that the report and testimony of Defendants' medical billing expert are inadmissible under Rule 702 based on: (1) qualifications; (2) reliability; (3) relevance; and (4) the collateral source rule. (Doc. 122 at 5–8). The Court will address each argument in turn.

#### 1. Qualifications

Plaintiffs first challenge Rossi's professional qualifications. (*See* Doc. 122 at 5). Plaintiffs assert that Rossi, while a registered nurse and certified legal nurse consultant, "is not qualified to offer her opinions regarding whether the charges for Torres' medical treatment was usual and customary for Las Vegas, Kingman, or Reno" because she is not licensed, nor has she practiced nursing in a medical setting, in Nevada or Arizona. (*Id.* at 5–6). Defendants respond that "[a] billing expert is not required to be a licensed nurse," so it is irrelevant where exactly Rossi is licensed or historically practiced. (Doc. 124 at 5). Rossi also routinely testifies in jurisdictions outside of the state in which she holds her nursing license—Wisconsin—with only one instance of exclusion. (Doc. 122-1 at 57–59; 124-7 at 6). The Court agrees with Defendants that Rossi's experience in the medical field, and familiarity with billing practices nationally, provides a "minimal foundation" in her area of expertise. *See Wagner*, 2016 WL 880371, at *5 (citations omitted). Her lack of particularized expertise regarding Arizona and Nevada "goes to the weight of [her] testimony, not its admissibility." *Id.* (citations omitted).

"As the Supreme Court explained in *Daubert* [*I*], vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2016 WL 6818945, at *3–4 (D. Ariz. Mar. 22, 2016) (denying a motion to exclude a medical billing expert because her

30 years of general experience in medical billing and past engagement by attorneys were sufficient qualifications). Accordingly, the Court finds Rossi to be qualified to provide testimony regarding the reasonable value of the medical services received by Plaintiff Torres under Rule 702.

### 2. Reliability

Plaintiffs next argue that Rossi's proffered testimony is unreliable because it is "derived exclusively from a third-party database whose information she has not verified." (Doc. 122 at 5). Rossi provides that she relied on MCMC's ZEBRA database—since rebranded as CareWorks—in forming her opinions of the reasonable value of medical services provided to Plaintiff Torres. (Doc. 124 at 6 (citing Doc. 124-7 at 7)). Rossi explains that the database compiles medical bills submitted for various Current Procedural Terminology ("CPT") codes in discrete geographic regions.[1] Defendants further provide that "[p]hysicians and facilities charge rates for procedures and products by submitting them under specific CPT codes," such that each CPT code corresponds to a particular medical service. (*Id.* at 7). Per her methodology, Rossi then uses the database, along with her experience in the medical billing field, to assess the accuracy and reasonableness of charges associated with each CPT code provided in the treatment of Plaintiff Torres. (*Id.*).

Rule 703 provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Thus, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id.* Arizona courts provide that a "negligence plaintiff cannot rely only on medical records and bills to show medical expenses were necessary and reasonable; other evidence must establish the latter." *Larsen v. Decker*, 995 P.2d 281, 286 (Ariz. Ct. App.

---

[1] "CPT medical billing codes are assigned by the American Medical Association to various medical services for the purpose of communicating uniform information about medical services and procedures." *Mathis v. Milgard Mfg., Inc.*, No. 3:16-CV-02914-BEN-JLB, 2019 WL 482490, at *2 (S.D. Cal. Feb. 7, 2019).

- 6 -

2000), *amended* (Feb. 22, 2000). It stands to reason, therefore, that experts may rely on industry standards and comparison data sources to establish the reasonableness of medical bills in a particular instance. Defendants assert, and Plaintiffs do not refute, that Rossi "follows the guidelines established by the American Medical Association with respect to CPT coding"—the standard industry practice—in her assessment. (Doc. 124 at 7).

Plaintiffs question the sample size and reliability of inputs (medical bills) for the database used by Rossi. (*See* Doc. 122 at 6). Plaintiffs, however, do not establish that the database includes inaccurate medical bills, mismatched CPT codes, or that the sample size of bills in the relevant regions are insufficient to provide fair estimates of reasonable medical charges for the services provided to Plaintiff Torres. (*Compare id. with* Doc. 124 at 7). Consistent with other courts, this Court agrees with Defendants "that the costing associated with CPT codes is standardized in the medical billing industry and something [Rossi] could reasonably rely upon." *Mathis*, 2019 WL 482490, at *1–2 (denying a motion to strike expert testimony pertaining to medical costs when the expert used a data source "to identify reasonable billing values for the CPT codes" submitted by the treating physician). To the extent Plaintiffs wish to scrutinize the bases for Rossi's opinions, "[Plaintiffs] can test those opinions at trial on cross-examination." *See id.* Accordingly, the Court finds Rossi's proffered testimony sufficiently reliable under Rule 702.

### 3. Relevance and Fit

Finally, Plaintiffs challenge the relevance of Rossi's testimony. (Doc. 122 at 6). Plaintiffs argue that the proffered testimony is irrelevant because Rossi's estimates of reasonable charges for the services provided herein are not based on an adequate understanding of customary charges in the relevant regions, nor "the result of any experience or specialized training." (*Id.*). Although couched under the issue of relevance, Plaintiffs arguments again go to the reliability of Rossi's methodologies and underlying data source. (*Compare id.* at 6 *with* Doc. 126 at 3–4). Based on the above reasoning, this Court determined that Rossi's methods are sufficiently reliable under Rule 702. *See supra*

Part III(A)(2). Assuming Plaintiffs can lay proper foundation for Rossi's analysis, the reasonable cost of medical charges incurred by Plaintiffs will assist the trier of fact in analyzing the disputed issue of damages. *See Daubert I*, 509 U.S. at 591. Accordingly, the Court finds that Rossi's proffered testimony is relevant to the facts of the case, thus satisfying Rule 702.[2]

### B. Collateral Source Rule

Additionally, Plaintiffs argue that this Court should "bar [] Rossi's testimony because it violates the collateral source rule." (Doc. 122 at 8). Specifically, Plaintiffs contend that "[d]iscussion of health insurance reimbursement . . . is clearly collateral source evidence." (*Id.*). Conversely, Defendants avow that "Rossi is not introducing evidence that Plaintiff[s] received any sort of insurance coverage or benefit from an alternative source." (Doc. 124 at 8).

As Plaintiffs point out, "Arizona law allows Plaintiffs to claim and recover the full amount of reasonable medical expenses charged." (Doc. 126 at 4 (citing *Lopez*, 129 P.3d at 496 (holding that the plaintiff "was entitled to claim and recover the full amount of her *reasonable* medical expenses for which she was charged" (emphasis added))). Here, Defendants purport to offer Rossi's report and testimony regarding customary medical charges to challenge the *reasonableness* of medical expenses incurred by Plaintiff Torres. (*See* Doc. 124 at 8). Courts in other jurisdictions that utilize the common law collateral source rule generally allow precisely this type of evidence to be introduced for this particular purpose. *See, e.g.*, *Aquino v. Watts*, No. 1:11-CV-212, 2014 WL 2208183, at *2 (D. Vt. May 28, 2014) ("[Defendants] may, however, introduce any relevant evidence of the reasonable value of medical services that is not barred by the collateral source rule. This may include, for example, evidence as to what the provider usually charges for the

---

[2] Plaintiffs also contend that Rossi "opines on the medical necessity of [Plaintiff] Torres' care, despite not being qualified as a medical doctor." (Doc. 122 at 6). Plaintiffs do not support this assertion with a citation, and Defendants further provide that Rossi's testimony is confined to the charges related to Plaintiff Torres' treatment. (*See generally* Doc. 124). If Defendants attempt to solicit testimony beyond the scope of Rossi's report or qualifications, Plaintiffs may raise the appropriate objection at trial.

services provided, or what other providers usually charge." (citation omitted)); *Reed v. Nat'l Council of Boy Scouts of Am., Inc.*, 706 F. Supp. 2d 180, 194 (D.N.H. 2010) (reasoning that New Hampshire's collateral source rule does not bar a defendant from "questioning the face amounts of the medical bills as equivalent to the reasonable value of [a plaintiff's] medical services" (citation omitted)). Without the full context available at trial, the Court cannot determine that Rossi's proffered testimony would necessarily discuss inadmissible insurance coverage or related benefits received by Plaintiff Torres at this stage. Accordingly, Plaintiffs motion on the basis of the collateral source rule is likewise denied.

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the Plaintiffs' Motion to Strike Defendants' Expert Mary Rossi (Doc. 122) is **DENIED**.

Dated this 10th day of May, 2019.

*/s/ James A. Teilborg*
James A. Teilborg
Senior United States District Judge